Cotan Corporation, formerly known as Cotex Corporation v. Commissioner.
Cotan Corp. v. Commissioner
Docket No. 108664
United States Tax Court
1943 Tax Ct. Memo LEXIS 265; 2 T.C.M. (CCH) 235; T.C.M. (RIA) 43285; June 8, 1943
*265 Respondent's determination of petitioner's unjust enrichment tax liability approved for failure of proof. Kenneth Carroad, Esq., 40 Worth St., New York, N. Y., and Eliot Rosenthal, Esq., for the petitioner. Mayte Boylan Greene, Esq., and William V. Crosswhite, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The commissioner determined a deficiency of $10,348.89 in petitioner's unjust enrichment tax liability for the calendar year 1936. In the statement attached to the notice of deficiency it was set out that petitioner, during the taxable year, received reimbursement of Federal excise tax (processing tax) from various supplies of merchandise in the amount of $26,495.61, from which figure respondent deducted $4.20 as a tax adjustment, leaving a balance of $26,491.41. It was further held by the Commissioner, as appears from the statement, that: Of the total amount of reimbursement received a portion in the amount of $13,555.30 was applicable to goods on hand on January 6, 1936, the date of the termination of the processing taxes imposed under the Agricultural Adjustment Act. Section 501 (b) (1) of the Act provides that the net income specified in section *266 501 (a) (2) above shall not include the income from reimbursement with respect to any article if such article (or the articles processed therefrom) were not sold by the taxpayer on or before the date of the termination of the Federal excise tax in question. In accordance with this provision of law, the net amount subject to the provisions of section 501 (a) (2) is $12,936.11. Accordingly, the reimbursement in the amount of $12,936.11 is subject to unjust enrichment tax to the extent that you shifted to others the burden of the Federal excise tax in question. The extent to which a taxpayer shifted to others the burden of such a Federal excise tax is presumed to be the amount indicated by the computations provided for by section 501 (e) of the Act. Schedules have been provided in the return, form 945, for the purpose of making these computations, but you have failed to submit information which conforms to the provisions of section 501 (e). Since you have not furnished competent evidence to establish that the burden of the tax was borne by you, the reimbursement in the amount of $12,936.11 is restored to net income subject to unjust enrichment tax. Under a long established rule, the *267 petitioner has the burden of proving that respondent's action in denying part of the exemption for processing tax claims was erroneous. At the hearing and on brief it contends that it successfully carried the burden by proving that "the sum of $25,233.51 of reimbursements was received by petitioner on articles included in its January 6, 1936 inventory", and that "the shift computation submitted created the statutory presumption that petitioner absorbed the tax burden and unless rebutted [and petitioner contends it has not been rebutted] petitioner is not liable to unjust enrichment tax." Petitioner also contends that the sum of $2,645.56 paid or incurred by petitioner as expense in obtaining the reimbursements is properly deductible. As evidence that it did not pass on the tax burden to its vendees, petitioner points to the fact that it operated at a net loss during 1934, 1935 and 1936. This last contention may be summarily disposed of as being without merit. ; . The fact that petitioner operated at a loss does not prove that it did not pass the *268 tax burden on to its vendees. The petitioner, formerly known as the Cotex Corporation, is a corporation organized under the laws of Delaware with its principal office in Newark, New Jersey. It filed its unjust enrichment tax return for 1936 with the Collector of Internal Revenue at Newark, New Jersey. During the years 1927 to 1936, inclusive, petitioner manufactured leatherized and rubberized fabrics, which products it sold to others who used them for automobile seat covers, upholstering, and handbags. It purchased as raw material cotton goods of seven or eight different constructions, such as sateen, drills and twills, piques, etc., from various cotton mills. Each of the various kinds of cloth consisted of numerous classifications, according to the weight per yard. While the cloth was in its original state it was possible to trace a given lot or roll to a particular supplier. After the material went into processing such tracing was impossible. On or before June 20, 1936, certain of the Cotan suppliers paid it $26,495.61 as reimbursements of processing taxes imposed on cotton by the Agricultural Adjustment Act. The petitioner had paid that sum to its vendors in purchasing its raw *269 materials. The Agricultural Adjustment Act was declared unconstitutional by the Supreme Court in , or January 6, 1936, thus establishing the basic date for processing tax reimbursements and unjust enrichment tax liability. In support of its first contention, i.e., that the total sum of reimbursements in question related to articles in its January 6, 1936 inventory, petitioner introduced two exhibits - one, an inventory as of December 31, 1935 to which was attached a work sheet bearing certain figures purporting to be an adjustment of the inventory to January 6, 1936. It was testified that the adjustment was in the handwriting of one Gault, an accountant who left the employ of petitioner in 1938. Gault could not be located and was not produced as a witness nor did any witness appear to authenticate the adjustment or indicate the source of the figures used by Gault. It was claimed that certain of petitioner's records were destroyed. The other exhibit was styled "Summary of Articles in January 6, 1936 Inventory" and consisted of certain work papers in the handwriting of several persons, none of them identified. No part *270 of this exhibit is in the handwriting identified as being that of Gault. The witness who identified these exhibits as being taken from the files and being part of the records of petitioner company was first employed by petitioner in 1937 and had nothing to do with the preparation of the exhibits. He had no knowledge of the January 6, 1936 inventory adjustment or of the summary, could not vouch for the authenticity of either or indicate by reference to the company records the source of the same. No other witness was able to establish the reliability of the two exhibits nor was this lack of supporting or source evidence satisfactorily explained. The admission of a document into evidence is not a ruling by the Court that the document proves the contention in support of which it is introduced nor is it a ruling on the weight that will be attributed to such document. Work papers and documents such as these are not self-sufficient. They must be related to the records which it is claimed support them. The evidence above referred to is so lacking in probative force as to be valueless. It does not possess sufficient authority nor does the record contain such evidence of accuracy or authenticity *271 as to overcome the presumption of correctness attaching to respondent's determination. We hold that petitioner has failed to establish that the items as to which reimbursement was received were included in its inventory of January 6, 1936. It will be remembered that the burden is on petitioner to prove respondent's action to be incorrect. Respondent allowed petitioner exemption from tax in the amount of $13,555.30, an amount for which he found support in petitioner's records. As part of his case respondent introduced certain journal vouchers extracted from petitioner's files which bear notations made by petitioner's employees indicating that as of April 30, 1936, when the matter was fresh in mind and the records were presumptively complete, that petitioner had at the time made a computation from its inventory which resulted in the exact figures allowed by respondent. The notation was in part as follows: "Our inventory of 1/6/36 included Proc. taxes amounting to 13,555.30 of which 4,192.33 was included in our 4/30/36 inventory". Other vouchers submitted tend to support respondent's contention that not all of the reimbursements made were included in the January 6, 1936 inventory. *272 Various letters and other documents drawn from petitioner's files were submitted by respondent in support of his contention that petitioner had passed on the processing tax wherever possible. The cumulative effect of these data is considerable and, in our judgment, tends to fortify the conclusion that the inventory adjustment offered by petitioner is not to be taken at its face value, and that in a substantial number of instances the tax was passed on to the vendees. In support of his second major contention, that the shift computation submitted invokes the statutory presumption that petitioner absorbed the tax and unless rebutted entitles petitioner to decision, petitioner introduced an exhibit captioned "Computation of Average Margin of Articles Sold". This document was a work sheet in pencil, testified to be in the handwriting of Gault. The witness who identified the exhibit did not help in its preparation and did not know whether the books or records of petitioner would substantiate the figures appearing thereon. He made no effort to verify the figures by recourse to the company records during an overnight recess of the Court although such action was suggested. He did not know *273 whether the supporting data were available among petitioner's records nor did he know whether the purchase invoices for the last three months of 1935 were existent. It was testified that it was a company practice to destroy certain papers and data after six or seven years. In view of the existence of the controversy over these processing taxes it is scarcely to be believed that petitioner destroyed records which it must have known were essential to prove and verify its case. The observations made above anent the first contention are equally apt here. Although the document was admitted in evidence, it was not adequately supported by other exhibits or reference to the books to be of any probative weight. The record strips it of all authority. It does not possess sufficient evidence of authenticity or accuracy to give petitioner advantage of the statutory presumption. We hold that petitioner has failed to establish by adequate or satisfactory evidence either of its major contentions. The further contention that the sum of $2,645.56 alleged to have been paid or incurred as expenses in obtaining the reimbursements must also be denied for failure of proof. There is no evidence whatsoever *274 tending to show that this amount, or any amount, was incurred for the statutory purpose of "obtaining such reimbursements or refunds". The fact that petitioner incurred expenses in connection with prosecuting its so-called windfall tax matters does not satisfy the statute (section 501 (d)). It is obvious on the record that the expenses here claimed are in large part, if not entirely, the expenses incurred subsequent to obtaining the reimbursements and in prosecuting the present action. The item is disallowed in any amount. Decision will be entered under Rule 50.